**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                  No. 98-4091

MICHAEL LORENZO MORRIS,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-94-46)

Submitted: September 22, 1998

Decided: October 22, 1998

Before MURNAGHAN, NIEMEYER, and WILLIAMS,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Andrew Michael Sacks, SACKS & SACKS, Roanoke, Virginia, for
Appellant. Robert P. Crouch, Jr., United States Attorney, Julie C.
Dudley, Assistant United States Attorney, Rachel E. Jackson, Third-
Year Law Student, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael Morris appeals from the district court order entered pursuant to jury verdict finding him guilty of conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C.§§ 841(b)(1)(A), 846 (1994). Finding no merit to his claims, we affirm his conviction and sentence.

At Morris' trial, the government called numerous unindicted coconspirators to testify about Morris' distribution activities. Anthony Rush described how Morris occasionally sold him half-ounce quantities of crack cocaine. On cross-examination, Morris' attorney, J. Lloyd Snook, attempted to impeach Rush by asking him about his cooperation with authorities in past criminal investigations. In the course of his examination Rush indicated that Snook had represented him on two prior criminal charges. After a brief interchange in which Snook and Rush disagreed about whether Snook had represented Rush on a prior drug charge, Snook abandoned the line of questioning. Following Morris' conviction in October 1995, he filed a motion for a new trial. In December 1996 Morris, having obtained new counsel, filed a supplemental motion for a new trial alleging that trial counsel was ineffective due to a conflict of interest. Following a hearing, the district court denied Morris' motions for a new trial.

Morris first claims that trial counsel's performance was compromised by a conflict of interest stemming from his former representation of Rush and another government witness. He further asserts that counsel was ineffective for failing to request a jury instruction addressing his failure to testify. "The rule in this circuit is that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance." United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992)."The Sixth Amendment

2

is implicated only when the representation of counsel is adversely affected by an _actual_ conflict of interest." United States v. Tatum, 943 F.2d 370, 375 (4th Cir. 1991). To succeed in establishing ineffective assistance of counsel based on an actual conflict of interest, a claimant must prove that counsel took action on behalf of one client and that the action adversely affected the defense of the other. See id. at 376. An attorney's performance has been adversely affected when the attorney actively pursued conflicting interests. See Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). The inquiries into whether an actual conflict of interest existed and whether it adversely affected the representation "are fact-based inquiries that often will be intertwined." United States v. Swartz, 975 F.2d 1042, 1048 (4th Cir. 1992).

On this record we do not find that Snook's former representation of two government witnesses conclusively shows a conflict of interest or that any potential conflict adversely affected Snook's representation of Morris. Accordingly, Morris is foreclosed from raising in this appeal his claims of ineffective assistance based on an alleged conflict of interest. See Williams, 977 F.2d at 871. Similarly, considering the strict standard for establishing claims of ineffective assistance and the overwhelming evidence against Morris presented at trial, Morris has not conclusively shown that Snook was ineffective for failing to request a jury instruction with respect to Morris' failure to testify. Thus, Morris is relegated to raising his ineffective assistance claims in a § 2255 motion.

Morris next asserts that the district court erred in not conducting an evidentiary hearing during trial to determine whether trial counsel's performance was compromised by a conflict of interest. To protect the interest in conflict-free representation, Federal Rule of Criminal Procedure 44(c) requires the district court to "promptly inquire with respect to such joint representation and [ ] personally advise each defendant of the right to the effective assistance of counsel, including separate representation." Fed. R. Crim. P. 44(c). Although the plain language of Rule 44(c) speaks to conflicts arising from joint representation, Morris asserts that the district court had an obligation to sua sponte conduct a Rule 44(c) hearing because Snook's former representation of Rush signaled a conflict of interest. However, Rule 44(c) is confined to conflicts arising from joint representation, see Cerro v. United States, 872 F.2d 780, 786-87 (7th Cir. 1989); see also United

3

States v. Pungitore, 910 F.2d 1084, 1140-41 (3d Cir. 1990) (refusing to expand application of Rule 44(c) beyond its plain meaning), and Morris offers no authority for his position that the district court erred in not conducting a conflict of interest hearing based on Snook's former representation of a witness. Accordingly, we find no merit to his claim that the district court erred in not holding a Rule 44(c) hearing.

Morris assigns error to the district court's decision that it was without jurisdiction to consider the additional grounds for a new trial put forth in his supplemental motion for a new trial. Federal Rule of Criminal Procedure 33 provides that a motion for a new trial based on any ground other than newly discovered evidence must be made within seven days after verdict unless an extension is granted within that seven-day period. Morris' claim that the district court's order extending the time within which he could file post-trial motions enabled him to append additional grounds to his motion for a new trial is unpersuasive. A Rule 33 motion based on ineffective assistance must be filed within seven days after the verdict. See United States v. Smith, 62 F.3d 641, 651 (4th Cir. 1995). Because Morris raised his ineffective assistance claims more than seven days after the jury returned a guilty verdict and failed to obtain an extension within that seven-day period, the district court correctly found that it lacked jurisdiction to hear the claims. See id. at 648.

Morris further alleges that the district court erred in not instructing the jury that his failure to testify could not be considered in reaching a verdict. Because this issue was not raised at trial, this court's review is for plain error only. See United States v. Olano, 507 U.S. 725, 731 (1993). Plain error requires an error that is clear or obvious, that affects substantial rights, i.e., is prejudicial to the defendant, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings. See id. at 732. Here, the district court instructed the jury that the law did not require Morris to testify and that the jury could draw no inference from his election not to testify. In light of this instruction, any failure to give a more elaborate instruction on Morris' decision not to testify did not amount to plain error.

Morris next asserts that the district court erred in striking two prospective jurors for cause. A district court's determination to excuse a juror for cause is entitled to "special deference." Patton v. Yount, 467

4

U.S. 1025, 1038 (1984). Morris maintains that the district court should have inquired further of the potential jurors to find out whether they could set aside their personal views and experiences and render an impartial verdict on the evidence. District courts are given wide discretion in conducting voir dire to determine whether a particular juror should be excused. See Person v. Miller , 854 F.2d 656, 665 (4th Cir. 1988). Here, prospective juror Thomas McIntosh disclosed to the court that he would have a problem accepting as true the testimony of witnesses testifying in exchange for reduced sentences. Although this is a legitimate factor to consider in assessing a witness' credibility, the district court's decision to strike McIntosh on this basis was not an abuse of discretion. Further, the district court had ample reason to strike prospective juror Ruby Smith based on her admission that her knowledge of a witness' past might affect her ability to be impartial.

Morris also maintains that the district court erred in allowing Special Agent Andre Jolie to testify as an expert on drug conspiracies. He asserts that Jolie's testimony amounted to improper speculation about the drug conspiracy at issue in the case, or in the alternative, irrelevant descriptions of drug conspiracies in general. The district court's determination to admit expert testimony is reviewed for abuse of discretion. See Kopf v. Skyrm, 993 F.2d 374, 378 (4th Cir. 1993). Morris' discontent with the substance of Agent Jolie's testimony ignores the plain language of Rule 702 which allows for an expert to testify as to his specialized knowledge in a given area if the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony about drug organizations and common practices of drug dealers is routinely admitted in drug cases in order to assist the jury in understanding the mechanics of drug conspiracies. See, e.g., United States v. Gastiaburo, 16 F.3d 582, 588-89 (4th Cir. 1994). Accordingly, the district court acted within its discretion in admitting Agent Jolie's expert testimony.

Finally, Morris claims that the district court erred in the calculation of his base offense level for sentencing purposes. He first assigns error to the district court's decision to attribute to him more than 500 grams of cocaine. Morris contends that this amount is a speculative figure derived from the uncorroborated testimony of cooperating government witnesses. The government has the burden of proving by a

5

preponderance of the evidence sentencing factors, including the quantity of drugs for which a defendant should be held accountable. See United States v. Estrada, 42 F.3d 228, 231 (4th Cir. 1994). In proving these factors, the government may rely upon information found in a defendant's presentence report unless the defendant affirmatively shows that such information is inaccurate or unreliable. See United States v. Gilliam, 987 F.2d 1009, 1014 (4th Cir. 1993). In cases like this where no drugs are seized, the sentencing court may approximate the quantity to be used for sentencing, and hearsay alone can provide sufficiently reliable evidence of quantity. See United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992). This court reviews the district court's findings on sentencing factors for clear error. United States v. McDonald, 61 F.3d 248, 255 (4th Cir. 1995).

Morris presented no evidence challenging the presentence report's recommendation to hold him responsible for 510.29 grams of crack cocaine. The evidence adduced at trial supports this figure, and the district court expressly reviewed the trial testimony before adopting the amounts recommended in the presentence report. Therefore, the district court did not clearly err in determining the amount of drugs attributable to Morris.

Morris also challenges the four point adjustment to his base offense level based on his leadership role in the offense. The sentencing guidelines provide for a four-level sentencing enhancement "[i]f the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." United States Sentencing Guidelines Manual § 3B1.1(a) (1994). The Commentary to § 3B1.1(a) states:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

6

U.S.S.G. § 3B1.1, comment. (n.4). Enhancements for a defendant's leadership role in a conspiracy under § 3B1.1(a) have been applied where the defendant was "a major supplier of both drugs for distribution and re-distribution by other members of the conspiracy." See United States v. Banks, 10 F.3d 1044, 1057 (4th Cir. 1993); see also United States v. Smith, 914 F.2d 565, 570 (4th Cir. 1990). Review of an enhancement for the defendant's role in the conspiracy is under the clearly erroneous standard. 18 U.S.C. § 3742(e) (1994); United States v. Arnoldt, 947 F.2d 1120, 1128 (4th Cir. 1991).

The evidence demonstrated that Morris traveled from Norfolk to the Esmont area for the purpose of selling cocaine. He was a regular supplier of cocaine to other drug dealers within the conspiracy, occasionally fronted cocaine, and induced individuals to make sales for him in exchange for small quantities of cocaine. On appeal, Morris does not dispute that he had at least nine co-conspirators. When viewed as a whole, the evidence suggests that Morris was a major supplier of cocaine to drug dealers in the Esmont area and recruited accomplices to facilitate his cocaine sales. Under these circumstances, we can not say that the district court's four-level enhancement for Morris' leadership role in the conspiracy was clearly erroneous.

We therefore affirm Morris' conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED